UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                      |   |                              |
|----------------------|---|------------------------------|
| SUE ANN PAIVA        | : |                              |
|                      | : |                              |
|                      | : |                              |
| v.                   | : | Civ. No. 3:17CV00081 (WWE)   |
|                      | : |                              |
| CITY OF BRIDGEPORT   | : |                              |
|                      | : |                              |
|                      | : |                              |

RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Sue Ann Paiva brings a seven count complaint

against her former employer, the City of Bridgeport (the

"City"), alleging wrongful discharge, hostile work environment

and retaliation under the Americans with Disabilities Act

("ADA"), 42 U.S.C. §12101 et seq., and the Connecticut Fair

Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§46a-60 et

seq. She also alleges wrongful discharge under Section 223 of

the Charter for the City of Bridgeport.[1]

Defendant City of Bridgeport moves for summary judgment on

---

[1] In Count One, plaintiff alleges wrongful discharge on the basis
of her disability (diverticulitis) in violation of the ADA, and
in Count Four, on the basis of her disability and/or sexual
orientation in violation of CFEPA. In Count Two, plaintiff
alleges that the City, through plaintiff's supervisors
Monquencelo Miles and Richard Weiner, created a pervasive and
hostile work environment on the basis of plaintiff's disability
in violation of the ADA, and in Count Five, on the basis of her
disability and/or sexual orientation in violation of CFEPA. In
Counts Three and Six, she alleges retaliation in violation of
the ADA and CFEPA, respectively. Finally, in Count Seven, she
alleges wrongful discharge under Section 223 of the Charter for
the City of Bridgeport.

all counts of the complaint.

For the reasons that follow, defendant's Motion for Summary Judgment **[Doc. #47]** is **GRANTED** in part and **DENIED** in part.

<u>STANDARD OF LAW</u>

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(a); <u>In re Dana Corp.</u>, 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing— that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam)(internal quotation citations and marks omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). In order to defeat the motion for summary judgment, she must present such evidence as would allow a jury to find in her favor. <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the conclusory allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. <u>Zigmund v. Foster</u>, 106 F. Supp.2d 352, 356 (D. Conn. 2000)(citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008). And because a court is foreclosed from "mak[ing] credibility determinations or weigh[ing] the evidence" at the summary judgment stage, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000), it must "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. Thus, in "a discrimination case where intent and state of mind are in dispute, summary judgment is ordinarily inappropriate," Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir. 2000), provided that the nonmovant has done more than "simply show that there is some metaphysical doubt as to the material facts," Plotzker v. Kips Bay Anesthesia, P.C., 745 F. App'x 436, 437 (2d Cir. 2018) (summary order) (quoting

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). "A trial court should exercise caution when granting summary judgment to an employer where, as here, its intent is a genuine factual issue." <u>Carlton</u>, 202 F.3d at 134.

STATEMENT OF FACTS

The following facts are taken from the parties' statements of material facts not in dispute, <u>see</u> Def's Local Rule 56(a)(1) Stat. [doc. #47-1]; Pl's Local Rule 56(a)(2) Stat. [doc. #58]; and from exhibits submitted in connection with the Motion for Summary Judgment. Unless otherwise indicated, these facts are not contested. Additional facts will be introduced as necessary in the Court's analysis of plaintiff's claims.

On September 28, 2015, plaintiff commenced employment with the City of Bridgeport in the position of Benefits Coordinator. [Miles Aff. ¶6]. Plaintiff was employed for a probationary period of six months, pursuant to the provisions of §213(a) of the City Charter. <u>Id.</u> at ¶10. The probationary term expired on March 28, 2016, six months from the start of plaintiff's employment. <u>Id.</u> at ¶10.

Throughout her employment, plaintiff was supervised by Monquencelo Miles. <u>Id.</u> at ¶11. Miles was supervised by the director of the department, Richard Weiner. <u>Id.</u> at ¶5.

Plaintiff suffers from a physical impairment, diverticulitis, which substantially limits one or more of her major life activities, including major bodily functions of the digestive system. [Doc. #47 at 20 (defendant admitting for purposes of summary judgment that plaintiff's diverticulitis is a "disability" under the ADA and CFEPA)]. The City admits, for purposes of summary judgment, that it is subject to the ADA and CFEPA; that plaintiff was disabled within the meaning of the ADA and CFEPA; and that plaintiff was qualified for the position with or without a reasonable accommodation. Defendant further admits that under CFEPA, plaintiff was a member of a protected class and qualified for the position. Id.

Paiva testified that her diverticulitis was symptomatic throughout her employment with the City. [Paiva Tr. 223:4].

Plaintiff's sexual orientation is homosexual, which is known to the defendant through plaintiff's conversations with her supervisor Miles. [Miles Aff. ¶8]. Plaintiff notified Miles of her sexual orientation sometime after Thanksgiving, when she told Miles that she broke up with her girlfriend. [Paiva Tr. 47:19-25].

Mid-October 2015

In mid-October, when Paiva arrived at work before the 9:00 AM start of the workday, she experienced an episode of diverticulitis requiring her to use the restroom facilities.

[Paiva Tr. 45-46]. Upon reporting to her desk after 9:00 AM, plaintiff notified Miles, her supervisor, that she had a physical impairment which necessitated use of the bathroom facilities at unplanned times and that the episodes were likely to reoccur. [Paiva Tr. 45:25-46:5-8]. Miles advised plaintiff that "if she needed to use the restroom that she could just go and did not have to notify anyone that she had stomach issues." [Miles Aff. ¶30]. The parties dispute whether Paiva used the term diverticulitis to describe her impairment. [Paiva Tr. 46:5-8, 54:10-13; 216:24-25:1-3; Miles Aff. ¶30].

In late October 2015, plaintiff met with Miles to discuss her work progress. [Miles Aff. ¶17; 105:18-106:1-6]. Miles "responded that given that she had only been on the job a short period of time that she was doing fine." Id. ¶17.

November 13, 2015

On November 13, 2015, at approximately 10:55 AM, plaintiff experienced another episode of diverticulitis and left the office to use the restroom. [Paiva Tr. 217:24-25]. After using the restroom, Paiva stepped outside the building taking five minutes of her fifteen minute morning break. [Paiva Tr. 219:7-16]. Miles initially told plaintiff that her break times were flexible. [Paiva Tr. 221:1-14; 223:17-21;224;7-10]. Thereafter, Miles instructed her that work breaks were only permitted between 10:00 AM to 11:00 AM and 3:00 PM to 4:00 PM; and that

lunch was from 1:00PM to 2:00 PM. [Doc. #17 at ¶60; Paiva Tr. 224:18—25]. Paiva testified she was directed to report to Miles every time plaintiff left her desk whether to use the restroom, take breaks or lunch, attend meetings or take days off. [Paiva Tr. 227, 233, 234]. Plaintiff inquired why Miles fixed the times for her breaks when previously Miles informed the employees of the Benefits Department that break times would be flexible. [Doc. #17 at ¶61; Paiva Tr. 223:11-16; 234:9-21]. Paiva testified there was no written policy regarding breaks. [Paiva Tr. 366:15-22]. The parties dispute whether Miles fixing break times and lunch hour and/or imposing a reporting requirement is evidence of discriminatory animus.

November 23, 2015

On November 23, 2015, plaintiff completed a self-evaluation at Miles' request. [Def. Ex. J; Paiva Tr. 211]. The evaluation was provided to Miles and forwarded to Richard Weiner, the director of the department. Weiner did not review the evaluation with Paiva. [Weiner Aff. ¶13; Paiva Tr. 260 at 5-8]. Neither Miles nor Weiner ever discussed the self-evaluation with plaintiff. [Paiva Tr. 374:15-25-375:1-13].

December 4, 2015

On December 4, 2015, plaintiff received an e-mail from Miles stating that whenever plaintiff left the office, she must notify her or, if she were not available, the Benefits

Department's receptionist. [Pl. Ex. 4]. When plaintiff asked Miles if the new reporting rule applied to restroom use, Paiva noted that Miles responded, "any time you leave the office. So yes, even with restroom breaks." Id. Paiva testified there was no written reporting policy. [Paiva Tr. 366:9-14].

After this date, plaintiff experienced additional bouts of diverticulitis and, pursuant to Miles' instructions, was required to go to Miles' office and report when she was going to use the restroom. Paiva testified that she would "stand there and wait for [Miles] to acknowledge the fact that I was standing there needing to use the restroom. And then when she did, be told, I can see you, just go and do what you need to do. But if I hadn't said anything, I would have been reprimanded for that as well" [Paiva Tr. 200:5-12]. Miles never counseled or documented her claim that plaintiff was taking numerous breaks. The parties dispute that the reporting requirement is evidence of discriminatory animus.

December 28, 2015

On or about December 28, 2015, upon her return from vacation, Miles spoke to Paiva about an email plaintiff sent to Weiner on December 24, 2015, notifying him that she was in the emergency room and would report to work as soon as she was released. [Paiva Tr. 349:19-25-350:6]. According to Paiva, the first thing that Miles did "[w]hen she came back...was walk

directly over to my cubical and started yelling at me for having
not put her on a copy. That Richard [Weiner] was not my
supervisor. She was. And she needed to know in addition to him,
that she should be on a copy of all things like that at all
times, regardless of whether she was there or not." [Paiva Tr.
350:7-15].

## January 19, 2016

On January 19, 2016, following an email exchange between
Miles and Paiva, plaintiff testified that Miles "came over to my
office and told me that my question had no merit. I had no point
and to pretty much just drop it. It had nothing to do with me.
That I was not the one that was making the decision." [Paiva Tr.
2257:19-24]. "[T]he manner in which she did it was intimidating
and harassing." [Paiva Tr. 258:8-9]. She testified that Miles
stood over her, hovering and wagged her finger at her. [Paiva
Tr. 258:10-12].

## Allegations in Dispute

- Miles averred that Paiva "constantly requested that she be
  trained" and "constantly would ask questions and make
  inquiries" which "frustrated" Miles because she "was very
  busy and had many responsibilities associated with [her]
  job." [Miles Aff. ¶18]. Miles averred "[i]f I was short or
  terse with Ms. Paiva when she asked a question or when she
  requested training, it was not because of her claimed

disability or because of her sexual orientation but was because I was very busy." [Miles Aff. ¶18]. Paiva testified "[s]o it got to the point where I didn't know whether the next thing I did was going to bring the wrath of Miss Miles down on my back."[Paiva Tr. 92:1-4]. The parties dispute whether this is evidence of discriminatory animus.

- Q: And when you say she treated you in a hostile manner, describe to me what she would do?

  A: "She would take her finger and point her finger and shake it at me (indicating) and tell me to go back to my office and sit down and do whatever it was I was doing over there. And she would come to me when she was ready to." [Paiva Tr. 193:1-9]. She stated, "It's not necessarily just the things that she told me, it's the manner in which she told me and the reason which brought about her having told me." [Paiva Tr. 239]. Paiva attributed Miles' treatment to her disability and sexual orientation. [Paiva Tr. 194:4-7, 13; 198:16-18; 239:12-15; 240:3-10; 240:12-20].

- Miles directed Paiva to write the number 2 and 8 more clearly on an invoice calculation and criticized her for abbreviating the word street, failing to include identification numbers on enrollment forms on Cobra packages. [Miles Aff. ¶21; Paiva 89:20-90; 274 9-19]. The

parties dispute whether discriminatory animus was the
reason for Miles' direction.

- Miles imposed reporting requirements whenever plaintiff
  left the office. Paiva testified the reporting requirements
  were not an accommodation for her disability but actually a
  deterrent and unreasonable. [Paiva Tr. 246:19-25-246:1-6
  and 20-24]. The parties dispute whether discriminatory
  animus was the reason for the reporting requirements.

- Miles took away job responsibilities from Paiva, such as
  COBRA packages, anything to do with medical, dental,
  prescriptions, termination packages and age out packages
  and invoicing for medical, dental and prescriptions. [Miles
  Aff. ¶22; Paiva Tr. 206:7-13]. Paiva testified, that by
  December 24, "I was told to find something else to do and
  keep myself occupied. Mr. Weiner went so far as to tell me
  to read a magazine if I had to." [Paiva Tr. 206:14-20]. The
  parties dispute whether Miles taking away job
  responsibilities is evidence of discriminatory animus.

- In mid-December 2015, when a large number of City employees
  were laid-off, Paiva was asked to assemble termination
  packets for 23 employees. [Paiva Tr. 67:19-68:19]. Paiva
  stated that she was instructed by Miles to include a life
  conversion form in each packet. [Paiva Tr. 68:1-4]. Miles
  reviewed the assembled termination packets and upon

discovery that the life conversion form wasn't completed Miles "started berating" Paiva with regards to not completing part of the form prior to its insertion. [Paiva Tr. 68:14-19]. Paiva contends that she received no training regarding this form and when she pointed this out to Miles "she became more agitated" and upset [Paiva Tr. 69:2-16, 83:21-22, 86:16-17 ("she was either rude [or] belittling me")]. "She never sat down with me and told me how I did something incorrectly and then gave me back the item to fix." [Paiva Tr. 11-17]. The parties dispute whether Miles taking away job responsibilities is evidence of discriminatory animus.

- Paiva testified that "My claim is [Miles'] behavior toward me and everything that happened during the period of time that I was employed prior to that. Not being recommended for hire was based on her discriminatory behavior with regards to my sexual orientation and my physical disability." [Paiva Tr. 142:4-11].

Reported Conduct

December 24, 2015

On December 24, 2015, plaintiff made her first complaint about Miles to Weiner regarding her hostile working conditions, describing her day to day experiences and mistreatment by Miles. [Paiva Tr. 144:1-5; 204:17-19]. Weiner averred that "Ms. Paiva

did not tell me that she believed that Miles was mistreating her because of her sexual orientation or because she had some type of disability." [Weiner Aff ¶15, 21].

<u>January 19, 2016</u>

On January 19, 2016, Paiva met with Weiner a second time to discuss her interaction with Miles earlier that day. "I told him I don't understand why I'm being treated this way." [Paiva Tr. 145:5-6]. She testified that she told Weiner that since they last met "nothing had changed...it had only gotten worse." [Paiva Tr. 259:17-20]. "I believe I said based on who I am and I put my hand from the top and brought down (indicating) who I am as a person." [Paiva Tr. 145].

Paiva testified that at both the December 24 and January 19 meetings,

> I pretty much told [Weiner] that I felt like I was being harassed. It was hostile. She and I had difficulty speaking to each other. That I wasn't certain whether or not [it] had something to do with my sexual orientation and my disability, but ever since I had made mention of anything, that her attitude had been totally nasty.

[Paiva Tr. 260:17-25; 261:1-9; 351:12-19; 352:10-15;]. She described to Weiner the "[y]elling, belittling, chastising. Humiliating me in front of other people. Making me announce so that she could hear me that I was going to the restroom. It's extremely embarrassing." [Paiva Tr. 285:9-14].

The parties dispute whether Paiva reported to Weiner that

Miles was harassing her because of her sexual orientation or disability. [Weiner Aff. ¶20-21].

Paiva also testified that on January 19, 2016, she contacted the Union Steward Corey Bromley following the incident with Miles. [Paiva Tr. 255:1-25].

February 3, 2016

In the morning on February 3, 2016, Paiva and Union Steward Bromley, "attempted to give [Weiner] a letter in a sealed envelope and they wanted [him] to sign for it." [Weiner Aff. ¶26; Weiner Tr. 20:1-23:6]. Weiner did not open the letter. [Weiner Aff. ¶27]. Weiner brought the unopened letter to Labor Relations and they advised him to return it to Paiva without opening it. [Weiner Tr. 18-20]. Paiva stated that the letter summarized her two conversations with Weiner regarding Miles behavior toward her. [Paiva Tr. 144:9-14]. "Every time I spoke to [Weiner] it got worse." [Paiva Tr. 144:15-16]. Plaintiff testified that, among other things, her letter contained an allegation of harassment on the basis of sexual orientation. [Paiva Tr. 12-15]. Weiner averred that he later learned that the letter in the sealed envelope contained a bullying complaint. [Weiner Aff. ¶27].

In the afternoon on February 3, 2016, Miles and Weiner provided Paiva with a Memo dated February 2 prepared by Miles along with performance appraisals prepared by Miles and signed

by Weiner. [Miles Tr. 49:1;Def. Ex. O-1 to O-5]. The Memo
informed plaintiff that she would not be recommended for
permanent hire. [Pl. Ex. 5; Paiva Tr. 367:10-25; 371:10-17].

Neither Miles nor Weiner submitted performance evaluations
during plaintiff's six month probationary period at the
intervals set forth in Civil Service provisions of the
Bridgeport City Charter Rule V(2). [Weiner Tr. 28:2-24]. Rule
V(2) of the Rules of the Civil Service Commission, provides,

> [d]uring this probationary period the executive head
> of a department shall submit a fair and impartial
> report to the commission, on a form supplied by the
> commission, on the performance of each probationary
> appointee. Such performance report shall be submitted
> at each of the following intervals: (a) two weeks
> after appointment, (b) one month after appointment and
> (c) each month thereafter until the end of the
> probationary period.

[Pl. Ex. 2].

It is undisputed that Paiva did not receive any
contemporaneous written performance evaluations prior to the
February 3 Memo. [Paiva Tr. 140:22-141:6]. It is also undisputed
that contemporaneous notes allegedly prepared by Miles have not
been produced in this litigation or appended as an exhibit to
this motion.[2] [Miles Tr. 43:2-48:20; Weiner Tr. 24:17-20, 25:21-
26:16].

_____

[2] Plaintiff appended the minutes of the February 18, 2016 of the
Civil Service Commission meeting, which states in relevant part,
"Commissioner Emanuel asked Ms. Miles if she was making note of
the problem areas. Ms. Miles said that she was <u>mentally noting</u>
the performance issues and coaching Ms. Paiva on a weekly

Prior to February 3, 2016, Paiva did not receive written performance evaluations or disciplinary actions. [Weiner Tr. 21:18-22:1; Paiva Tr. 369:2-6]. At no time prior to February 3, 2016, was plaintiff warned or counseled that she was failing her probationary period of employment. [Weiner Tr. at 27:8-13; Paiva Tr. 368:2-20].

Defendant concedes, for purposes of summary judgment, that "a probationary employee would receive some benefit if the City timely completed the probationary reports and reviewed them with the employee because doing this would help the employee understand how he/she is performing and where he/she needs to improve." [Doc. #47 at 24].

The City initiated the process to terminate plaintiff's employment within five weeks of the first complaint Paiva made to Weiner about Miles, December 24, 2015, and within two weeks of the second complaint, on or about January 19, 2016. [Weiner Tr. at 13, 18].

Termination of Employment

Defendant terminated plaintiff's employment on April 6. 2016. [Pl. Ex. 10].

_____

basis." [Pl. Ex. 6 at 4 (emphasis added)].

1. <u>Discrimination on the Basis of Disability and Sexual Orientation (Counts One and Four)</u>

A. <u>Disability Discrimination Under the ADA and CEFPA</u>

In Counts One and Four, plaintiff alleges that the City terminated her probationary employment on the basis of her disability in violation of the ADA and CFEPA. 42 U.S.C. §12101, <u>et</u> <u>seq</u>., Conn. Gen. Stat. §§46a-60 <u>et</u> <u>seq</u>.

Title I of the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard[s] to" any employment decision. <u>See</u>, 42 U.S.C. §12112(a). A claim brought under the ADA follows the familiar burden-shifting framework of Title VII cases: "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." <u>McBride v. BIC Consumer Products Mfg. Co., Inc.</u>, 583 F.3d 92, 96 (2d Cir.2009)(quoting <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006)).

Paiva also alleges that defendant violated the Connecticut Fair Employment Practices Act. The CFEPA makes it unlawful for an employer to discharge from employment an individual "because

of" the individual's physical disability. Conn. Gen. Stat. §46a-60(b)(1). Other than the CFEPA's broader definition of disability, "[c]laims under the CFEPA are analyzed using the same burden shifting framework set forth by the Supreme Court in McDonnell Douglas for use in Title VII, ADA, and ADEA cases." Berube v. Great Atlantic & Pacific Tea Col, Inc., Civil Action No. 3:06-cv-00197 (VLB), 2010 WL 3021522, at *9 (D. Conn. July 29, 2010); see also Hopkins v. New England Health Care Employees Welfare Fund, 985 F. Supp. 2d 240, 256 (D. Conn. 2013)("The only relevant difference between the analysis a court undertakes in regards to ADA and CFEPA claims is in defining physical disability."). "CFEPA's definition of physical disability is broader than the ADA's." Beason v. United Technologies, 337 F.3d 271, 277-278 (2d Cir. 2003). Because the City has agreed that Paiva was disabled under the narrower ADA for purposes of summary judgment, this difference does not affect the Court's analysis of the CFEPA claims.

Prima Facie Case

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of

h[er] disability." Sista*,* 445 F.3d at 169. Establishing a prima facie case "is not a demanding burden." Hopkins*,* 985 F. Supp. 2d at 252 (quoting Greenway v. Buffalo Hilton Hotel*,* 143 F.3d 47, 52 (2d Cir. 1998)).

Defendant concedes for purposes of summary judgment that the first three elements of a prima facie case under the ADA and CFEPA are established. Namely that defendant "is subject to the ADA and CFEPA; that plaintiff was disabled within the meaning of the ADA and CFEPA; and that plaintiff was qualified for the position with or without a reasonable accommodation." [Doc. #47 at 20]. Further, defendant admits that under CFEPA, "plaintiff was a member of a protected class and qualified for the position." Id. Defendant argues that plaintiff cannot establish a prima facie case because she cannot prove that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. Id. The Court disagrees. Paiva has come forward with sufficient evidence to show that she suffered an adverse employment action because of her disability. Paiva's probationary employment was terminated on April 6, 2016. [Def. 56(a)(1) Stat. ¶270]. See e.g. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)("Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.").

Miles was informed that plaintiff suffered from diverticulitis

and that this condition necessitated use of the restroom without delay when experiencing a flare-up of symptoms. [Pl. 56(a)(2) Stat. ¶¶68-70]. Upon learning of plaintiff's diverticulitis, Miles told her that she did not need to inform anyone before using the restroom. Id. ¶70. Plaintiff also presented evidence that her supervisor Miles later "reversed herself and rescinded the accommodation" for her diverticulitis instructing plaintiff to report to her before she left the office, including restroom breaks, and if Miles was not present, to inform Administrative Assistant Nancy Hart. Id. ¶¶71-74; Pl. Ex. 4. Miles knew of plaintiff's medical condition and the need for an accommodation based on her discussions with plaintiff. [Pl. 56(a)(2) ¶85]. Miles conceded that the City has no written policy regarding bathroom breaks and/or notifying a co-worker or a supervisor before taking such break. Id. ¶75. Plaintiff testified that her employment was terminated due to her disability. This is sufficient evidence to establish that Paiva suffered an adverse employment action because of her disability.

Legitimate Non-Discriminatory Purpose

Once a plaintiff has come forward at the summary judgment stage with sufficient evidence to show a prima facie case, "it creates a presumption that the employer discriminated against the employee in an unlawful manner." Greenway, 143 F.3d at 52. At this point, "the employer must offer through the introduction

of admissible evidence a legitimate non-discriminatory reason for the discharge." McBride*,* 583 F.3d at 96. "The defendant's burden also is light. The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." Greenway*,* 143 F.3d at 52.

The City has offered evidence that it terminated Paiva's probationary employment for poor performance rather than for a discriminatory reason. In the February 2, 2016, Memo Miles sent to Paiva, Miles detailed six examples of unsatisfactory performance supporting her assessment. These reasons included, inter alia*,* inappropriate attitude to a superior, a Cobra letter that contained incorrect information and was unsigned, mailing improperly filled out Life Conversion letter to terminated employees in a Cobra package, failure to read and respond to emails in a timely manner, using inappropriate language with a vendor and taking an argumentative posture and not accepting responsibility when she makes a mistake. [Def. 56(a)(1) Stat. ¶186; Pl. Ex. 5]. The evidence supporting these reasons, in light of the low burden of production, is enough for the court to conclude that the City has an explanation for its conclusion that plaintiff "fail[ed her] probationary period of employment" and was not recommended for permanent hire. As such, the "ultimate burden then rests on the plaintiff to persuade the

fact finder that the employer's proffered explanation is merely a pretext for its intentional discrimination." Greenway, 143 F.3d at 52.

Pretext

The evidence that Paiva presented to establish a prima facie case also raises a genuine issue of material fact as to whether the City's proffered reasons for terminating her probationary employment were pretextual. This evidence includes Miles actions after she learned of plaintiff's disability[3] including: Miles' hostile treatment of plaintiff and unfair scrutiny and criticism of plaintiff's work product; failure to provide necessary training during the probationary period; and reducing her job responsibilities. [Doc. #57 at 40-41].

Plaintiff further argues that after defendant became aware of her disability and her need for a reasonable accommodation, Miles imposed reporting requirements before plaintiff could use the restroom which is an unreasonable obstacle when her diverticulitis is symptomatic. Defendant denies this claim.

In further support of pretext, plaintiff states that on February 3, 2016, plaintiff received a memo from Miles listing

---

[3] Plaintiff testified that she first notified Miles in mid-October, approximately two weeks into her probationary period, that she had a physical impairment which necessitated use of the bathroom facilities at unplanned times and that the episodes were likely to reoccur. [Paiva Tr. 45:25-46:5-8].

job performance issues and stating that plaintiff would not be recommended for permanent hire. [Def. Ex. Z]. It is undisputed that Paiva did not receive any contemporaneous written performance evaluations prior to that memo. [Paiva Tr. 140:22-141:6]. It is also undisputed that Miles' contemporaneous notes have not been produced in this litigation or appended as an exhibit to this motion. [Miles Tr. 43:2-48:20; Weiner Tr. 24:17-20, 25:21-26:16].

The parties dispute whether Paiva received regular verbal feedback on her performance and whether Miles kept contemporaneous notes regarding Paiva's performance issues. Paiva contends that she did not receive performance evaluations either verbally or in writing until the February 3, 2016, memorandum from Miles informing plaintiff that her probationary employment was terminated. [Def. Ex. Z]. There is no dispute that Miles and Weiner did not complete timely performance evaluations in accordance with the City's Charter Section 213. There is also no dispute that after plaintiff completed a self-evaluation of her work performance dated November 26, 2015, neither Weiner or Miles provided feedback on her job performance. [Pl. 56(a)(2) Stat. ¶51]. Weiner testified that "[w]e did not [discuss the self-evaluation] and we were wrong not to []—we erred in not talking to her about this." [Weiner Tr. at 24:19-20].

> This case is in many ways a classic he-said/she-said
> one, which involves an assessment of the credibility
> of witnesses and the resolution of competing
> inferences that can be drawn from disputed facts. Such
> cases are not appropriate for a court to decide on
> summary judgment. Accordingly, summary judgment as to
> the claim of discrimination under the ADA is denied.
> See Rodriguez v. City of N.Y., 72 F.3d 1051, 1061 (2d
> Cir. 1995) ("On a summary judgment motion, the court
> is not to weigh the evidence, or assess the
> credibility of witnesses, or resolve issues of
> fact.").

Hopkins, 985 F. Supp. 2d at 253.

The Court finds that the evidence, taken together, raises a genuine issue of material fact with respect to discriminatory animus. Accordingly, summary judgment on Counts One and Four is DENIED.

### 2. Connecticut Fair Employment Practices Act- Discrimination on the Basis of Sexual Orientation and Unlawful Retaliation

For the reasons stated above, summary judgment is also denied on plaintiff's claim of discrimination on the basis of sexual orientation under CFEPA.

"The analysis of discrimination ... under the CFEPA is the same as under Title VII." Boutillier v. Hartford Pub. Sch., 221 F. Supp. 3d 255, 270 (D. Conn. 2016)(citing Kaytor v. Electric Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010)).

### Prima Facie Case

The Court finds that Paiva has satisfied the first three elements of the prima facie case. She identifies herself as a homosexual female, thus demonstrating that she is a member of a

protected class. [Pl. 56(a)(2)(A)¶¶7-9; (B)¶3]. While the issue

of Paiva's performance is a disputed matter, there is no genuine

dispute that she had fifteen years of experience in human

resources and was hired for her position based on a competitive

civil service process. [Pl. 56(a)(2)(B)¶¶7-15]. Thus, she has

established her qualificatons for the job. Third, her

termination of employment qualifies as an adverse employment

action.

The remaining question is whether Paiva has provided

sufficient evidence demonstrating that the circumstance of the

adverse employment actions taken against her give rise to an

inference of discrimination. Paiva has provided evidence which,

if believed by the trier of fact, demonstrate a change in Miles'

treatment and evaluation of her after she became aware of her

sexual orientation. Plaintiff testified that in addition to her

physical appearance, hairstyle and dress, she posted a photo of

her girlfriend in her cubicle and later told Miles after

Thanksgiving that she had broken up with her girlfriend. [Paiva

Tr. 47:7-50:7; 54:15-55:6]. For example, Paiva testified that

"Miss Miles appeared to be uncomfortable around me. I was

standing too close to her and she asked me to move away and to

step back away from her." [Paiva Tr. 49:3-7]. Going forward

after Thanksgiving, Miles treatment of Paiva was increasingly

harsh, she complained of the discriminatory treatment to Weiner

on December 24, 2015 and January 19, 2016, culminating in the adverse employment action. Plaintiff claims that her employment was terminated due to sexual orientation. This is sufficient evidence to establish that Paiva suffered an adverse employment action because of her sexual orientation.

"[T]he burden of establishing this prima facie case in employment discrimination cases is 'minimal.' " McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). The Court finds that Paiva has met this minimal burden with regard to her claim of discriminatory treatment on the basis of her sexual orientation.

Legitimate Non-Discriminatory Reason

For the reasons previously stated above, the defendant has likewise met its burden of articulating a non-discriminatory reason for the adverse employment actions based on job performance issues. [Def. Ex. O]. Because the defendant satisfied its burden of production, the burden shifts back to Paiva to show that the reasons articulated by the defendant are a pretext for discrimination.

Pretext

"Such pretext may be demonstrated either by reliance on the evidence comprising the prima facie case or by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Piela v. Connecticut Department of Correction, No. 3:10cv749 (MRK), 2012 WL 1493827, at *8, (D. Conn. April 26, 2012)(quoting Polito v. TriWire Eng'g Solution, Inc., 699 F. Supp. 2d 480, 492 (E.D.N.Y. 2010)).

The Court similarly finds that the evidence comprising Paiva's disability discrimination claim is sufficient to show pretext on the basis of her sexual orientation. This evidence includes Miles actions after she learned of plaintiff's sexual orientation including: Miles' hostile treatment of plaintiff and unfair scrutiny and criticism of plaintiff's work product; failure to provide necessary training during the probationary period; reducing her job responsibilities; failure to provide supervisory feedback on her November 2015 self-evaluation; reporting discrimination to Weiner on December 24, 2015 and January 19, 2016; failure to issue contemporaneous disciplinary warnings or counseling; failure to complete timely Civil Service evaluations; and issuing the February 3, 2016 memo. Because Paiva has demonstrated that a reasonable jury could find that the defendant's non-discriminatory reasons were a pretext for discrimination on the basis of sexual orientation, the defendant's summary judgment is DENIED as to Count Four.

3. Hostile Work Environment (Counts Two and Five)

Defendant next argues that summary judgment should enter on plaintiff's hostile work environment claims on the basis of plaintiff's disability in violation of the ADA and disability and/or sexual orientation in violation of CFEPA.[4]

To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012)(quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010)). "A plaintiff must demonstrate that the incidents were either 'sufficiently continuous and concerted to be considered pervasive, or that a single episode is severe enough to

_____

[4] "Although the Second Circuit has not expressly held that the ADA authorizes claims for hostile work environment, district courts have found that the ADA encompasses hostile work environment claims." Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (citing De La Cruz v. Guilliani, No. 00CIV.7102 (LAK)(JCF), 2002 WL 32830453, at *9 (S.D.N.Y. Aug. 26, 2002)); Lewis v. Boehringer Ingelheim Pharmaceuticals, Inc., 79 F. Supp. 3d 394, 412 (D. Conn. 2015) (quoting Monterroso, 591 F. Supp. 2d at 584-85). A hostile work environment claim under CFEPA is examined under the same standards as those governing a hostile work environment claim under Title VII. Brittell v. Dep't of Correction, 247 Conn. 148, 165-168 (1998).

establish a hostile working environment.' " Miller v. Ethan
Allen, Civil Action No. 3:10-CV-01701(JCH), 2012 WL 1899378, at
*7 (D. Conn. May 24, 2012) (quoting Brennan v. Metro. Opera
Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999)). "Isolated, minor
acts or occasional episodes do not warrant relief." Miller, 2012
WL 1899378, at *7 (quoting Brennan, 192 F.3d at 318). "The
standard for a hostile work environment claim is a demanding
one." Scott v. Mem'l Sloan-Kettering Cancer Ctr., 190 F. Supp.
2d 590, 599 (S.D.N.Y. 2002) (granting summary judgment motion on
plaintiff's hostile work environment claims).

A court looks to the totality of circumstances, including
the "frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a mere
offensive utterance; and whether it unreasonably interferes with
an employee's work performance." Harris v. Forklift Sys., Inc.,
510 U.S. 17, 23 (1993). "Isolated acts, unless very serious, do
not meet the threshold of severity or pervasiveness." Alfano v.
Costello, 294 F.3d 365, 374 (2d Cir. 2002)(citing Brennan, 192
F.3d at 318).

Plaintiff testified that her supervisor Miles repeatedly
harassed her because of her disability and/or sexual orientation
and that her supervisor's conduct was objectively and
subjectively hostile or abusive. The behavior by Miles that
plaintiff testified to included: rescinding an accommodation

provided to plaintiff for her diverticulitis allowing use of the restroom on an "as needed" basis; adding reporting restrictions that delayed access to the restroom that caused her to suffer anxiety and fear of having an accident at work; adopting special reporting rules when leaving the office; reprimanding plaintiff in front of coworkers; rude, belittling, demeaning and dismissive treatment and irrational conduct; lack of job training; Miles hovering and wagging her finger at her; Miles' continuously changing job instructions, protocols and directions; removing job responsibilities; Weiner's failure to take action to investigate Paiva's complaints after reporting Miles' discriminatory conduct; termination of probationary employment without timely or contemporaneous performance evaluations, warnings, counseling or disciplinary action. See Pl. 56(a)(2)(A) Stat. ¶¶28-29, 32-33, 38, 44-45, 67-70, 72-73, 95,  Pl. 56(a)(2)(B) Stat. ¶¶28, 33-34, 41, 45, 50-52, 66-67, 70-76, 80-88, 90, 94-95, 98-100; Paiva Tr. 67:10-11, 71:11-17, 200:18-201:7, 201:9-24, 203:11-17, 208:19-209:18, 236:17-237:11; 258:10-12.

Viewed in a light most favorable to plaintiff, this conduct was extreme enough that a reasonable employee would find "the conditions of her employment altered for the worse." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000). "A trial court should exercise caution when granting

summary judgment to an employer where, as here, its intent is a genuine factual issue." <u>Carlton</u>, 202 F.3d at 134.

As such, a reasonable trier of fact could conclude that plaintiff was subjected to a hostile work environment based on her disability and/or sexual orientation. Summary judgment as to plaintiff's hostile work environment claim is therefore DENIED on Counts Two and Five.

### 4. <u>Retaliation (Counts Three and Six)</u>

Defendant next argues that summary judgment should enter on plaintiff's retaliation claims brought under the ADA and CFEPA in Counts Three and Six. Retaliation claims under the ADA and CFEPA are analyzed using the <u>McDonnell </u>Douglas burden shifting formula. <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002); <u>Berube</u>, 2010 WL 3021522, at *9.

#### <u>Prima Facie Case</u>

"To establish a prima facie case of retaliation under the ADA [and CFEPA], a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA [and CFEPA], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 159 (2d Cir. 1999). "A

plaintiff's burden at this prima facie stage is <u>de minimis</u>."
<u>Treglia</u>, 313 F.3d at 719 (emphasis in original).

Paiva has come forward with sufficient evidence to establish a prima facie case of retaliation. She complained to Weiner about Miles' discriminatory conduct on at least two occasions December 24 and January 19 and attempted to provide a letter to Weiner in the morning on February 3, 2016, with Union Steward Bromley. Because there is evidence before the Court to support a finding that Paiva believed that the City was discriminating against her because of her disability and sexual orientation, and because she complained based on this belief, she satisfies the first element.

Paiva provided testimony that she was engaging in protected activity. While Weiner disputes that Paiva put him on notice of the discriminatory conduct, this evidence is sufficient to create a material question of fact as to whether the City had knowledge that Paiva was engaging in protected activity.

Further, Paiva has come forward with sufficient evidence to show that she suffered an adverse employment action because of her disability and sexual orientation. Paiva's probationary employment was terminated on April 6, 2016. [Def. 56(a)(1) Stat. ¶270]. <u>See</u> <u>e.g.</u> <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999)("Adverse employment actions include discharge, refusal to

hire, refusal to promote, demotion, reduction in pay, and reprimand.").

Finally, Paiva has come forward with sufficient evidence upon which a reasonable trier of fact could find a causal connection between her complaints to Weiner and her subsequent termination of employment. In establishing a causal connection, our Court of Appeals has recognized "that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." Treglia, 313 F.3d at 720 (citing cases). The temporal proximity between the protected activity on December 24, 2015, January 19 and February 3, 2016, and the termination of probationary employment on February 3, 2016, is sufficient to establish the required causal link for a prima facie case. Id. at 721.

### Legitimate Non-Retaliatory Reason

Defendant's reasons for its allegedly retaliatory actions are the same as those in the context of the discrimination action and are based on job performance issues. Accordingly, the City has produced sufficient evidence of a legitimate non-retaliatory reason for the termination of Paiva's probationary employment.

### Pretext

Similarly, plaintiff relies on the same evidence to show

pretext and retaliatory motive. Moreover, construing the evidence in a light most favorable to plaintiff, the evidence shows that after completing a self-evaluation at the end of November, at the request of Miles, plaintiff received no feedback from Miles or Weiner. Paiva had two meeting with Weiner when she complained of the discriminatory conduct by Miles. Finally, on the morning or February 3, Paiva along with the Union Steward attempted to deliver a letter to Weiner which included claims of discriminatory conduct. Weiner refused to take delivery of the letter. In the afternoon of February 3, Miles provided a Memo and performance evaluations to Paiva and notified her of the termination of her probationary employment.

On this record, Paiva has put forth sufficient evidence to raise a genuine issue of material fact of pretext and retaliatory motive to survive summary judgment on Counts Three and Six.

5. Charter for the City of Bridgeport

In Count Seven, plaintiff alleges a violation of the Civil Service provisions of the Bridgeport City Charter for terminating plaintiff's employment without according her the protections of Section 223 of the Bridgeport Charter. The parties agree that the provisions of Section 223 apply to permanent employees. Plaintiff alleges that since her probationary employment was not terminated within the six month

probationary period that she should have been accorded the protections of Section 223 of the Bridgeport City Charter, including the right to a post-termination hearing. Defendant disagrees.

The following facts are undisputed. Plaintiff commenced probationary employment on September 28, 2015. She was informed that the City was terminating her probationary employment on February 3, 2016. Appended to Miles' Memo dated February 3, were four Reports on Probationary Appointee prepared by Miles and signed by Weiner on February 3, 2016. None of the reports were submitted to the Civil Service Commission in accordance with the time intervals set forth in Rule V(2) of the Rules of the Civil Service Commission.[5] Plaintiff was placed on paid leave on February 3, 2016. In accordance with the Bridgeport City Charter Section 213, the Civil Service Commission, Personnel Director and the Executive Head of the department determines the permanent employment of a probationary employee. Charter Section 213 does not require the City to wait until the full

---

[5] Rule V(2) of the Rules of the Civil Service Commission provides, "[d]uring this probationary period the executive head of a department shall submit a fair and impartial report to the commission, on a form supplied by the commission, on the performance of each probationary appointee. Such performance reports shall be submitted at each of the following intervals: (a) two weeks after appointment, (b) one month after appointment and (c) each month thereafter until the end of the probationary period."

probationary period ends before it can act to terminate the
probationary employment of a probationary employee if the City
determines that the probationary employment should be
terminated.

It is further undisputed that, plaintiff's matter was placed
on the February 9, 2016, Civil Service Commission's agenda, but
the meeting was cancelled due to the lack of a quorum and was
rescheduled to February 18, 2016. Plaintiff appeared before the
Bridgeport Civil Service Commission on February 18, the
Commission, Personnel Director David Dunn and Benefits
Department Head Richard Weiner were present. Plaintiff had an
opportunity to be heard and she read and submitted a 6-page
statement at the meeting. Her sister Angela McCarthy had an
opportunity to speak on her behalf at the meeting. The
Commission tabled consideration of termination of plaintiff's
probationary employment until the March 8, 2016 meeting, upon
learning that plaintiff filed a bullying complaint against Miles
pursuant to the City's Anti-Bullying policy and to permit the
completion of the investigation by the Labor Relations
Department. On March 8, the matter was tabled again because the
investigation was not completed. Plaintiff testified that the
Commission did not request her consent to delay the hearing
pending the completion of the investigation.

Pursuant to the City Charter, Paiva's six month probationary

period expired on March 28, 2016. Senior Labor Relations Officer Thomas Austin finished the bulling investigation in the beginning of April and made a presentation to the Commission at their next scheduled meeting on April 6, 2016. At the April 6, 2016, meeting of the Civil Service Commission, the Commission terminated plaintiff's employment with the City of Bridgeport.

Plaintiff argues that because she was terminated after the conclusion of her probationary employment period that she was entitled to appeal her dismissal at a post-termination hearing pursuant to Section 223 of the Bridgeport Charter. The Court disagrees and finds that plaintiff's reliance on <u>Chotkowski v. Connecticut Personnel Appeal Bd.</u>, 176 Conn. 1, 6 (1978), is distinguishable on the facts. In <u>Chotkowski</u>, the Court found that the "hospital officials had six years to judge the plaintiff's fitness to serve as chief of medicine" thus finding plaintiff was a permanent employee at the time of his dismissal. <u>Id.</u> Similarly, the plaintiff's probationary employment in <u>Coppola v. Pers. Appeal Bd.</u>, 174 Conn. 271, 273-74 (1978) had expired nearly three months before the City "summarily dismissed" the employee "a time well beyond the six-month period."

Here, plaintiff was notified that Miles and Weiner were recommending the termination of her probationary employment on February 3, 2016, and the Commission began consideration of her

termination closely thereafter at the February 9, 18 and March 6 Commission meetings, within the probationary period. As set forth above, the Commission continued its consideration of Paiva's termination of probationary employment until after the completion of the bullying investigation. Within days of the expiration of plaintiff's probationary period on March 28, 2016, Officer Austin presented his investigation findings to the Commission at their next scheduled meeting on April 6, 2016. Plaintiff was provided notice of the termination of her probationary employment, she had an opportunity to be heard, her complaints were investigated and presented to the Commission at their next scheduled meeting. The Court agrees with defendant that any delay caused by the investigation of plaintiff's complaint against her supervisor was for a legitimate reason. "Any other result would create a bizarre and nonsensical result because it could force the City to act and possibly terminate the employee even though it does not have any information to make an informed decision." [Doc. #47 at 86; Id. at 85 (citing Connelly v. Comm'r of Correction, 258 Conn. 394, 407 (2001) ("In interpreting a statute, common sense must be used.... The law favors rational and sensible statutory construction....")].

Plaintiff argues that defendant's failure to prepare timely performance evaluations and the failure "to tak[e] action on the plaintiff's permanent appointment within six months of her

original appointment" clearly demonstrates "lack of compliance with the two integral components of the civil service system." [Doc. #57 at 29]. She further contends that strict compliance with the procedures of the civil service laws is mandatory and "'the doctrine of substantial compliance has no application to the performance of duty by those entrusted with the administration of the civil service law.'" Id. at 34 (citing Resnick v. Civil Serv. Comm'n of City of Bridgeport, 156 Conn. 28, 30-33 (1968) (citing State ex rel. Kos v. Adamson, 226 Minn. 177, 182 (1948))]. Plaintiff asserts that since there is no "genuine dispute regarding defendant's failure to strictly comply with its civil service rules and charter provisions governing the plaintiff's probationary employment, the court should, sua sponte, enter judgment against the defendant on the plaintiff's civil service cause of action and declare its termination of the plaintiff's employment invalid for its violation of these rules and charter provisions." Id. at 34. The Court has reviewed the cases cited by plaintiff in support of her argument for strict compliance and finds them inapplicable here. For example, Resnick and Kos both involved competitive employment examinations in accordance with civil service provisions. See e.g. Doc. #57 at 28 (citing Ziomek v. Bartimole, 156 Conn. 604, 610 (1969)(regarding strict compliance with statutory provisions for civil service examinations), Walker v.

Jankura, 162 Conn. 482, 489-90 (1972)(holding that "[s]tatutory provisions for civil service examinations must be strictly complied with..."); Id. at 30 (citing Cassella v. Civil Serv. Comm'n of City of New Britain, 202 Conn. 28, 35 (1987)(reviewing civil service law provisions for promotion by competitive examination); Id. at 32 (citing Burke v. City of Bridgeport, 2008 WL 1735584, at *4 (Conn. Super. Ct. Mar. 31, 2008)(involving collective bargaining process related to promotional examinations). Under the circumstances of this case, the lapse of the probationary period during the investigation of plaintiff's bullying complaint before the Commission, Personnel Director and Department Head voted on plaintiff's termination of probationary employment did not violate the civil service provisions of the Bridgeport City Charter.

Accordingly, summary judgment is GRANTED as to Count Seven.

CONCLUSION

For the reasons stated, defendant's Motion for Summary Judgment **[Doc. #47]** is **GRANTED** as to Count Seven and **DENIED** as to Counts One through Six.

The Clerk of the Court is directed to refer this case for a settlement conference with a Magistrate Judge.

SO ORDERED at Bridgeport this 15th day of August 2019.

                    /s/
                    _____
                    WARREN W. EGINTON
                    SENIOR UNITED STATES DISTRICT JUDGE